FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL S.,[1] Plaintiff, vs. ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] Defendant. | No. 1:19-cv-03010-MKD ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT **ECF Nos. 14, 15** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

5. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

     The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

     On April 1, 2015, Plaintiff applied for Title II disability insurance benefits.

Tr. 107, 201-07.  On December 3, 2015, Plaintiff applied for Title XVI

supplemental security income benefits.  Tr. 208-17.  Both applications alleged a

disability onset date of March 31, 2015.  Tr. 201-17.  The applications were denied

initially, Tr. 126-32, and on reconsideration.  Tr. 135-45.  Plaintiff appeared before

an administrative law judge (ALJ) on May 19, 2017.  Tr. 41-106.  On December

28, 2017, the ALJ denied Plaintiff's claims.  Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2016, had not engaged in substantial gainful activity since March 31, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus; lumbar degenerative disc disease; bipolar disorder; anxiety disorder; personality disorder; alcohol abuse; and cannabis use disorder. Tr. 17-18. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18-19. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> He can lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday with normal breaks, and sit about 6 hours in an 8-hour workday with normal breaks. He can occasionally stoop, squat, crouch, crawl, kneel, and climb ramps and stairs. He can never climb ropes, ladders, or scaffolds. He is capable of engaging in unskilled, repetitive, routine tasks in 2-hour increments. He is capable of working in proximity to but not in coordination with coworkers and can have occasional contact with supervisors. He cannot have contact with the public. He will be absent from work one time/month and be off task at work up to 10% of the time but can still meet the minimum production requirements of the job.

Tr. 20.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's

ORDER - 7

age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as press operator, mail clerk, and bindery machine feeder offbearer.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 31, 2015, though the date of the decision.  Tr. 29.

On November 27, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  He raises the following issues for review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 2.

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 10-21; ECF No. 16 at 2-6. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence in the record.  Tr. 21.

### 1. Inconsistent with Medical Evidence

The ALJ found Plaintiff's symptom testimony was inconsistent with the

medical evidence.  Tr. 21.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence

is a relevant factor in determining the severity of a claimant's pain and its disabling

effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Minimal objective evidence is a factor which may be relied upon to discount a

claimant's testimony, although it may not be the only factor.  *Burch v. Barnhart*,

400 F.3d 676, 680 (9th Cir. 2005).

As to his physical impairments, Plaintiff testified to having a disabling lower

back impairment and chronic pain radiating down his left leg.  Tr. 21.  He reported

that at times he could not get out of bed due to back pain, that his fingers would go

numb when lying on his back, that he could not lift heavy objects, and that he had

difficulty standing or walking for prolonged periods.  Tr. 20, 256, 267-71.  He

described a "deep aching mid to low lumbar pain that was intermittent but

occurring daily," and "worse with twisting or turning of his lumbar spine." Tr. 21.

The ALJ found these claims were inconsistent with Plaintiff's unremarkable

imaging studies, Tr. 21; Tr. 340, 345 (June 2015 x-ray: lumbosacral spine in

normal alignment, good preservation of disc spaces, bodies, laminae, pedicles,

intact transverse processes, no abnormalities in the sacrum/sacroiliac joints); Tr.

356 (Feb. 2006 MRI: mild concentric bulging of L2-3 intervertebral disc, posterior

central/left paracentral disc herniation at L5-S1, tiny left paracentral disc

protrusion at L4-5, minimal concentric bulging at L2-3); Tr. 501 (Jan. 2017 exam:

"unremarkable," vertebral bodies, discs, and neural arches intact and in normal

alignment), and unremarkable physical exams, which largely showed normal

physical functioning with some tenderness and a slight decrease in range of motion

(ROM). Tr. 21; Tr. 345-46 (June 2015 exam: lumbar spine tenderness with slight

decrease in ROM, negative for muscle spasms and straight leg raise; no radicular

findings; patient observed to walk 20 feet without aid, sit comfortably during

exam, rise from chair and get on/off exam table without aid, walk on heels and

toes, and perform tandem walk and full squat); Tr. 451-52 (Jan. 2017 exam:

limited active ROM in lumbar spine; no muscle spasms despite self-report of

limited mobility, limping, and tenderness). The ALJ noted Plaintiff did not report

sciatic or radicular numbness or weakness in his exams prior to his hearing. Tr.

21. Plaintiff argues the evidence cited was not "wholly" benign and emphasizes

ORDER - 12

that one exam showed compression of the S1 nerve root.  ECF No. 14 at 21 (citing

Tr. 354 (Jan. 2006 exam: mild compression of the S1 nerve root with a marked

severity rating)).  However, it appears that the note was based on an MRI

conducted in 2004, two years earlier.  Tr. 353.  Apart from this singular exam, the

record primarily consists of unremarkable imaging studies.  Plaintiff also offers an

exam report indicating a positive straight leg raise and limping.  ECF No. 14 at 21

(citing Tr. 429 (Jan. 2015 exam: positive straight leg test on right side, low back

pain, and limited ROM in neck/back)).  Even acknowledging this evidence, the

ALJ's interpretation of the record as a whole was reasonable; he rationally

concluded that objective imaging and physical exams showed generally mild

results inconsistent with the degree of pain and limitation Plaintiff alleged.

Because the ALJ's interpretation is rational and supported by substantial evidence,

it will not be disturbed.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th

Cir. 2008) (The Court must consider the ALJ's decision in the context of "the

entire record as a whole," and if the "evidence is susceptible to more than one

rational interpretation, the ALJ's decision should be upheld." (internal quotation

marks omitted)).

 The ALJ also found the record contained only mild objective findings

regarding Plaintiff's diabetes.  Tr. 21.  He noted that, despite Plaintiff's

inconsistent management of the disease, Tr. 21; Tr. 346 (June 2015 exam showed

Plaintiff had not taken medication for two years); Tr. 364 (Oct. 2015 exam noted

Plaintiff did not moderate his diabetes with medication/diet), there was no

evidence of serious complications. Tr. 21; Tr. 346 (June 2015 exam: no

retinopathy or peripheral neuropathy). He noted Plaintiff's sole visit to the

emergency room for diabetes occurred because he ran out of medication. Tr. 21;

Tr. 373 (March 2016 exam: presented to ER to get a refill for metformin; no

polydipsia, polyuria, or dizziness indicated). Moreover, the ALJ noted Plaintiff

"does well" when he properly manages his medications, diet, and blood sugars. Tr.

21; Tr. 447 (exam noted diabetes "improving" while on medication). On this

record, the ALJ reasonably concluded the medical evidence did not support the

level of impairment Plaintiff alleged as a result of diabetes. ECF No. 10 at 21-22.

Finally, the ALJ found Plaintiff's allegations of disabling mental

impairments were inconsistent with his "generally unremarkable presentation and

mental status during appointments and evaluations." Tr. 22-23. While

acknowledging Plaintiff appeared anxious or depressed at times, the ALJ noted

most of Plaintiff's treatment providers observed normal psychological functioning.

Tr. 22. The record supports this conclusion. Tr. 367-68 (Oct. 2015 exam: normal

mood, speech, orientation, concentration, and ability to think abstractly; Plaintiff

was cooperative, arrived on time, made fair eye contact, and was casually attired

and groomed); Tr. 374 (March 2016 exam: normal orientation and mentation;

pleasant and cooperative mood/behavior); Tr. 421 (July 2017 exam: awake and alert; normal behavior, mood, and affect); Tr. 452 (Jan. 2017 physical exam: normal orientation; no suicidal ideation; Plaintiff presented with agitation/anxiety); Tr. 465 (Nov. 2016 exam: normal and appropriate mood, affect, speech rate, tone, and eye contact). Plaintiff argues that the record contained substantial abnormal findings and that the findings relied upon by the ALJ were made at physical treatment appointments where his psychological health exceeded the scope of the providers' specialties. ECF No. 14 at 20. However, the ALJ's interpretation of the record as a whole was not unreasonable; the majority of examinations over time reported normal psychological functioning assessed by various treatment providers, which the ALJ determined was inconsistent with Plaintiff's claims of disabling mental impairments. The ALJ's conclusions are supported by substantial evidence in the medical record.

2. *Work History*

Next, the ALJ found Plaintiff's work history was inconsistent with his symptom testimony. Tr. 22. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988) (finding substantial evidence supported determination that claimant's back problems were not disabling where her condition remained constant for several years and the

impairment had not prevented her from working during that time). The ALJ determined Plaintiff's symptom testimony was undermined by evidence that he had worked various exertional jobs in the past even after his longstanding conditions were diagnosed. Tr. 22. The record supports this conclusion. *See* Tr. 447 (reported lower back pain started in 2005); Tr. 342 (reported back pain started 15 years with a sudden increase in symptoms in 2003); Tr. 343 (reported he was diagnosed with diabetes at age 18 and started on oral agents around age 22); *see also* Tr. 241-55 (work history from 2004 to 2011 included janitorial work, food service, forklift operation, telemarketing, window screen installation, and restocking supplies); Tr. 227 (earnings of more than $10,000 each year from 2007-2010). Likewise, the ALJ noted Plaintiff engaged in substantial gainful activity despite his claim that he struggled with symptoms of his debilitating mental impairments for many years prior to the alleged onset date. Tr. 22; Tr. 76-88 (prior jobs included working in a warehouse, driving a forklift, and working for Yakima Juice). Plaintiff contends both his physical and mental impairments worsened over time. ECF No. 14 at 19. However, while there is evidence that Plaintiff self-reported his physical symptoms had worsened, *see* Tr. 48, 88-89, 92-93, 97 (testified conditions worsened over time and since he began working); Tr. 271 (reported increased complications with diabetes and increased back pain); Tr. 342 (reported more frequent and severe back pain), the objective medical evidence

does not support the claim. For example, an MRI of Plaintiff's lumbar spine taken in 2006 was unremarkable apart from mild concentric building, a "tiny" disc protrusion, and a herniation at L5. Tr. 356. A second MRI of his lumbar and cervical spine was ordered in 2017 after Plaintiff reported "sharp and shooting" back pain radiating to his feet, decreased mobility, limping, numbness, and tingling in his legs, Tr. 447; the 2017 MRI was unremarkable, finding "vertebral bodies, discs, and neural arches appear intact and in normal alignment." Tr. 501. In January 2017, despite his claim that his symptoms were worsening, Plaintiff's doctor reported his diabetes was improving. Tr. 447. As to his mental impairments, Plaintiff points only to self-reports to support his claim that his symptoms worsened. ECF No. 14 at 19 (citing Tr. 89, 92-93). On balance, the ALJ reasonably found Plaintiff's engagement in past exertional work, which persisted during and after he claimed to have a sudden increase in symptoms, was inconsistent with his testimony that his impairments prevent him from working.

Additionally, the ALJ noted the sporadic, temporary nature of Plaintiff's work suggested that his lack of employment is unrelated to his impairments and rather tied to "lifestyle choices" and/or substance abuse and incarceration. Tr. 24. When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability. *Tommasetti v. Astrue*, 533 F.3d 1035,

1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

(sufficient reasons for disregarding subjective testimony include stopping work for

nonmedical reasons and failure to seek care for allegedly disabling condition at the

time claimant stopped work).  Evidence of a poor work history that suggests a

claimant is not motivated to work is a permissible reason to discredit a claimant's

testimony that he is unable to work.  *Thomas*, 278 F.3d at 959; SSR 96-7 (factors

to consider in evaluating credibility include "prior work record and efforts to

work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. §

416.929(c)(3) (work record can be considered in assessing credibility).  Here,

Plaintiff testified that most of his work was temporary in nature and ended when

the temporary work was completed.  Tr. 76-77.  He testified that he worked only

one permanent job but was fired two days later due to a dispute with a coworker.

Tr. 77-79.  The ALJ's conclusion that Plaintiff's work ended for non-medical

reasons is reasonable and is supported by substantial evidence.  Plaintiff's

argument that the ALJ engaged in improper speculation is unsupported by the

evidence the ALJ cited and relied upon.  ECF No. 14 at 19.  Moreover, even if the

ALJ erred in making this conclusion, any error would be harmless because the ALJ

lists additional reasons, supported by substantial evidence for discrediting

Plaintiff's symptom testimony.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our

cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

### 3. Conservative Nature of Treatment

Next, the ALJ found the alleged severity of Plaintiff's physical impairments was inconsistent with the conservative treatment he elected. Tr. 22-23. The medical treatment a claimant seeks to relieve his symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). When a claimant receives only conservative or minimal treatment, it supports an adverse inference as to the claimant's credibility regarding the severity of her subjective symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Here, Plaintiff described disabling back pain but elected to manage it solely with medications, despite higher-level treatment, including physical therapy and injections, being advised. Tr. 447 (Jan. 2017 exam: failed to follow up with doctor regarding imaging and physical therapy); Tr. 481 (Nov. 2015 exam: failed to follow up with neurosurgeon and failed to pursue injections and physical therapy). The ALJ noted that Plaintiff also reported he "rarely take[s] over-the-counter Ibuprofen," and did not take prescription pain medication, which the ALJ found further detracted from the credibility of his allegations of severe pain. Tr. 343.

The ALJ also observed Plaintiff had relatively infrequent and minimal treatment for his diabetes. Tr. 373 (instructed to take one tablet of Metformin daily); Tr. 447 (exam noted diabetes was well-managed with diet, medications, and fingerstick blood sugars). The ALJ concluded Plaintiff's "physical complaints were inconsistent with the minimal, conservative treatment" he maintained. Tr. 22. Plaintiff does not directly address this finding, but notes that he attempted physical therapy and found it unhelpful, Tr. 483, and explains that he experienced adverse reactions to some pain medications prescribed. Tr. 473 (exam noted naproxen was "the most likely cause of your severe acid reflux and abdominal pain"). The ALJ's conclusion is supported by substantial evidence in the record and constitutes a clear and convincing reason to support an adverse credibility finding.

### 4. Non-Compliance with Treatment Recommendations

Similarly, the ALJ gave less weight to Plaintiff's symptom testimony due to his non-compliance with recommended treatment. Tr. 22-23. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*,

312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion). When there is no evidence suggesting the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ found Plaintiff was inexplicably non-compliant with his treatment recommendations. Tr. 22-23. He identified several instances where Plaintiff failed to follow treatment recommendations relating to his back. Tr. 22. For example, he was referred to physical therapy and instructed to have an x-ray performed on his back but failed to follow up. Tr. 447, 480. He also failed to follow up on a referral to see a neurosurgeon or obtain injections. Tr. 481. Plaintiff claims he tried physical therapy and it did not help; he cites to one exam on June 10, 2015 where he reported, "he had physical therapy about 10 years ago with minimal improvement at that time." ECF No. 14 at 13; Tr. 342. Nonetheless, physical therapy was repeatedly recommended and it does not appear Plaintiff attempted it again. Tr. 355, 361, 430, 446. Additional unpursued treatment

recommendations included: steroid injections, Tr. 351, neurological consults, Tr. 351, stretching and relaxation modalities, Tr. 355, 361, and light resistance training, Tr. 361. Additionally, the ALJ noted Plaintiff did not take prescribed medicines for pain and rarely took Ibuprofen. Tr. 22. Plaintiff claims the medications had adverse side effects. ECF No. 14 at 13. However, while it is clear that he was eventually instructed not to use nonsteroidal anti-inflammatory drugs (NSAIDs), Tr. 473, it is unclear whether other pain medications were advised. Plaintiff appears to have used other pain medications on occasion; on March 29, 2016, after the appointment where he was instructed to discontinue using NSAIDs, Tr. 473, Plaintiff requested pain medication, Tr. 468; on January 1, 2017, he reported his symptoms were relieved by pain medications, Tr. 447; he was administered Norco and did not report any side effects, Tr. 384, 396, 399, 411, 419; and he reported no side effects from medications on January 3, 2017, Tr. 429. As a result, it was reasonable for the ALJ to conclude that, because Plaintiff had unjustifiably rejected recommendations including physical therapy and injections, and because he rejected pain medications at times, his allegations as to the severity of his impairments were less reliable. Tr. 22.

The ALJ also noted Plaintiff failed to take medication as directed for his diabetes at times, despite his reports of improved symptoms with medication. Tr. 21 (citing Tr. 373, 446-47 (symptoms improved with medication); Tr. 453-54

ORDER - 22

(symptoms worsening; medication/education materials were not used as directed); Tr. 488 (noncompliant with medication and other instructions)). Plaintiff claims he stopped taking his medication because he believed it caused anxiety and because he experienced hypoglycemic episodes. ECF No. 14 at 13. The record shows his only reported hypoglycemic episode occurred while he was incarcerated and given insulin, which he normally does not take. Tr. 343. Moreover, it is not evident that metformin is related to Plaintiff's anxiety. Tr. 480-81 (Nov. 2015 exam: Plaintiff stopped taking metformin because it caused anxiety but was still experiencing anxiety and was taking other medication that may have increased anxiety). The ALJ's determination that Plaintiff's non-compliance with his diabetes medication detracted from his credibility is substantially supported by the record.

The ALJ found Plaintiff lacked an "adequate explanation for his failure to follow the course of prescribed treatment" and noted he had medical coverage through DSHS during the time various treatments were recommended. Tr. 22. Plaintiff contends the ALJ erred by failing to cite evidence supporting his conclusion and argues that "even with medical coverage, there are still barriers to treatment related to affordability that the ALJ didn't consider," including homelessness, lack of a driver's license and vehicle, and mental illness. ECF No. 14 at 11-12. However, Plaintiff failed to identify any evidence indicating he was unable to obtain services due to financial constraints and there are numerous

medical records indicating he was covered by insurance. *See* Tr. 369, 381, 393, 407, 417. Moreover, Plaintiff did not raise the issue of access to healthcare or affordability of healthcare before the ALJ and the record indicates he was able to access healthcare when needed: (1) he visited health care providers at least 19 times from 2005-2017, Tr. 340-509; (2) even without a driver's license, Tr. 45, he indicated that he was able to get around by walking, biking, taking the bus, or riding with his cousin, Tr. 50-51, 342, and demonstrated his ability to travel to various work sites, Tr. 241-53; (3) while he approximated he had been homeless from the summer of 2009, Tr. 212-15, to the summer of 2016,[3] Tr. 62, he was able to seek medical care numerous times during that period, Tr. 340-509; and (4) since June 2016, he has had stable housing and continued to disregard treatment recommendations, including taking medications as directed, trying physical therapy, or following up with specialists. Tr. 460-61 (Nov. 2016 exam: reported non-compliance with medication), Tr. 453-54 (Dec. 2016 exam: failed to take medications for diabetes and failed to follow-up with nutritionist and behavioral

_____

[3] The record is unclear as to when Plaintiff secured housing. At the hearing, Plaintiff stated he had been living in the housing provided by The Depot since June 2016. Tr. 62. However, his briefing indicates he was living in a tent city until November 2016. ECF No. 14 at 11-12.

ORDER - 24

health specialist); Tr. 446-47 (Jan. 2017 exam: recommended x-ray, physical therapy, and meeting with a behavioral health specialist and a nutritionist; exam noted Plaintiff failed to follow up with doctor regarding physical therapy, imaging, and medication). Moreover, the record suggests he was able to attend appointments before and after his mental impairments were diagnosed. Tr. 432 (assessing mild limitations in "ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances;") Tr. 52 (testified he takes a bus everyday to The Depot for meetings and/or counseling); Tr. 260 (indicated an individual from The Depot reminds him of where he needs to go); Tr. 258 (reported he does not need help or reminders taking medicine); *but see* 276 (reported he does need help remembering to take medicine). Rather, the ALJ found Plaintiff did not follow his recommended course of mental treatment, primarily due to issues of substance abuse. Tr. 23. The ALJ identified at least one instance where Plaintiff was told to "seek complete abstinence." Tr. 23 (citing Tr. 366). Plaintiff contends the single instance referenced is ambiguous as to whether it was communicated to Plaintiff or merely written down.[4] ECF No. 14 at 14. He asserts that, even assuming the provider instructed him to seek abstinence, the

---

[4] Plaintiff was unambiguously told to stop using alcohol by a separate provider, Tr. 460, though this was not referenced by the ALJ and not addressed by either party.

ORDER - 25

evidence of non-compliance cited by the ALJ predated any such instruction. ECF

No. 14 at 14. However, the ALJ cited to a record dated November 8, 2016,[5] which

occurred after the instruction was recorded on October 28, 2015, *see* Tr. 460-61;

Tr. 363, and in which the physician recorded Plaintiff was:

> managing [his] mood w/alcohol and occasional benzos off the street.
> Drinks between two and five 40-oz beers, occasional hard liquor.
> Last drink was at 10:00 this morning; reports he feels physical well at
> present time, however if he goes more than a few hours into the
> morning without a drink he develops withdrawal symptoms.

Tr. 461. The ALJ also cited a report from 2017 which indicated "the claimant is

consuming alcohol daily." Tr. 23; Tr. 450 (Jan. 2017 exam noted history of

alcohol use and that Plaintiff consumed 40-oz of beer daily). Based on this record,

the ALJ reasonably concluded Plaintiff's noncompliance with treatment

recommendations detracted from his credibility. *See Orn*, 495 F.3d at 638.

### 5. Daily Activities

The ALJ found Plaintiff's reported activities were inconsistent with his

alleged limitations. Tr. 24. A claimant's daily activities may support an adverse

credibility finding if: (1) the claimant's activities contradict his other testimony; or

(2) the claimant "is able to spend a substantial part of [his] day engaged in pursuits

involving performance of physical functions that are transferable to a work

---

[5] The record has two dates, November 8, 2016 and November 17, 2016. Tr. 460.

setting." *Orn*, 495 F.3d at 639 (*citing Fair*, 885 F.2d at 603).  It is reasonable for

an ALJ to consider a claimant's activities which undermine claims of totally

disabling pain in making the credibility determination.  *See Rollins*, 261 F.3d at

857.  However, it is well-established that a claimant need not be "utterly

incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.  In support of his

finding, the ALJ noted Plaintiff was able to shower, tend to personal hygiene, dress

himself, rise from a toilet, go grocery shopping, prepare meals, do dishes, clean his

house, and do his laundry.  Tr. 23.  He noted Plaintiff stated he could climb a full

flight of stairs with a railing, stand for an hour before needing a 10-minute break,

sit for over an hour, and comfortably lift 20-30 pounds.  Tr. 23.  He noted that

"despite [Plaintiff's] allegations of social difficulties," Plaintiff testified he spends

time with his cousin, has a good relationship with his mother, had a girlfriend for

five years, and communicates with his family by phone.  Tr. 24.  Additionally, he

noted that, while Plaintiff stated he could not walk distances or be around crowds

of people, he also testified that he routinely uses public transport, attends meetings

at The Depot (which are at times "packed"), and walks three blocks from his home

to catch the bus daily.  Tr. 24; *see* Tr. 51-54 (walks a minimum of six blocks per

day to attend meetings and return home; number of people at The Depot can be

anywhere from 10 people to "stuffed packed").  The record elucidates the same

inconsistencies between Plaintiff's statements and his alleged limitations.  *See* Tr.

257 (cannot be around big crowds), Tr. 261 (can walk at most one block before resting for 10-30 minutes); Tr. 277-78 (indicates walking/biking as forms of transportation), Tr. (can walk four to six blocks and then needs to rest for 20 minutes); Tr. 280 (when he is around a lot of people he has panic attacks and gets violent). The ALJ reasonably concluded that Plaintiff's reported daily activities were inconsistent with the level of impairment he alleged. Tr. 23-24. This was a clear and convincing reason to discredit his symptom testimony.

### 6. Inconsistent Statements

Finally, the ALJ found that several of Plaintiff's statements were inconsistent with the record. Tr. 24-25. An ALJ may support an adverse credibility finding by citing to inconsistencies in the claimant's testimony, prior inconsistent statements, and general inconsistencies in the record. *Thomas*, 278 F.3d at 958-59 (inconsistencies in the claimant's testimony are properly considered); *Tommasetti*, 533 F.3d at 1039. Here, the ALJ found Plaintiff's testimony that he "experiences anger control problems" and is exceedingly prone to physical assaults was inconsistent with the fact that "he has not assaulted anyone since June 2016, since he obtained stable housing and began treatment/taking medications." Tr. 25; *see* Tr. 58-60. Plaintiff argues that, while the ALJ's finding is accurate, it does not account for the near-physical assault he alleged to have

occurred right before the hearing.  ECF No. 14 at 19; Tr. 58-59 (reported he was about to assault another person but was stopped by his cousin).

In addition, the ALJ found Plaintiff's statement that he had not had a valid driver's license for 12 years was inconsistent with his testimony that he "knows how to drive and does if necessary," and testimony that he drove his cousin's car during an emergency.  Tr. 24.  However, these statements do not present an obvious contradiction and should not contribute to a finding of adverse credibility. Even if the ALJ erred in relying on these statements, any error is harmless because the ALJ provided additional reasons supported by substantial evidence to give less weight to Plaintiff's symptom complaints.  *See Carmickle*, 533 F.3d at 1162-63.

Overall, the ALJ's credibility finding is supported by substantial evidence.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of Dr. Drenguis, Dr. Crank, Ms. An, Ms. Jones, and Dr. Cline.  ECF No. 14 at 4-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

*1. William Drenguis*, M.D.

On June 10, 2015, Dr. Drenguis conducted a consultative physical examination. Tr. 340-47. He diagnosed Plaintiff with chronic low back pain manifested by "tenderness with a slight decrease in range of motion," history of

bilateral knee pain and right ankle instability (though he noted minimal current findings), and history of diabetes. Tr. 346. As to Plaintiff's back, he observed no muscle spasms, no radicular findings, and negative results on the straight leg raising test; he opined the findings were "most consistent with a chronic lumbar sprain." Tr. 346. He found no evidence of retinopathy or peripheral neuropathy relating to Plaintiff's diabetes. Tr. 346. Based on his findings, Dr. Drenguis determined Plaintiff could perform light work. Tr. 346.

The ALJ gave significant weight to Dr. Drenguis' opinion. Tr. 25. Plaintiff contends that the ALJ erred in doing so and that more weight should have been given to Dr. Crank's opinion. ECF No. 14 at 9. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Nguyen*, 100 F.3d at 1464. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631; 20 C.F.R. § 416.927(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record").

After reviewing the evaluations and opinions of Dr. Drenguis and Dr. Crank and considering the entire record, the Court concludes the ALJ's weighing of these two doctors' opinions is supported by substantial evidence. In weighing the opinions, the ALJ first noted Dr. Drenguis' familiarity with social security regulations and experience assessing the nature and severity of claimants' conditions. Tr. 25. The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" in evaluating a medical opinion. *Orn*, 495 F.3d at 631. Next, the ALJ found that Dr. Drenguis' opinion, and particularly his conclusion that Plaintiff was capable of performing light work with frequent postural limitations, was consistent with treatment records and with Plaintiff's reported daily activities, as discussed *supra*. Tr. 25 (citing Tr. 369-428, 436-511). Consistency with evidence in the record is a relevant factor to evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ noted that Dr. Drenguis recognized and documented the lack of objective evidence supporting some of Plaintiff's allegedly severe impairments, Tr. 25, which is evident from a review of Dr. Drenguis' diagnoses and prognoses. Tr. 345-46 (x-ray of lumbar spine was unremarkable, x-ray of left knee was unremarkable, no muscle spasm, negative for straight leg raise, no radicular findings, minimal current findings regarding historically reported knee pain and ankle instability, no retinopathy or peripheral neuropathy related to diabetes). He

further noted that Dr. Drenguis was aware that Plaintiff had failed to treat his

diabetes with medication for two years. Tr. 25, 346. In contrast, as discussed

*infra*, the ALJ found Dr. Crank's opinion was unsupported by the record; he noted

Dr. Crank included a diagnosis for cervical degenerative disc disease where there

was no objective evidence to support it. Tr. 25. While Plaintiff suggests the ALJ

should have weighed the opinions of Dr. Crank and Dr. Drenguis differently, the

ALJ provided legally sufficient reasons for giving more weight to Dr. Drenguis'

opinion and less weight to Dr. Crank's opinion.

### 2. *Jeremiah Crank, M.D.*

On November 5, 2015, Dr. Crank performed a consultative physical exam.

Tr. 505-07. He found Plaintiff's impairments would limit him to sedentary work

(*i.e.*, able to lift 10 pounds maximum and frequently lift or carry lightweight

articles; able to walk or stand only for brief periods) due to neck and back pain

with radiculopathy/degenerative disc disease. Tr. 25, 507. He found Plaintiff's

neck and back pain would have a marked effect on his work activity and would

significantly interfere with "[his] ability to perform one or more basic work-related

activities." Tr. 506. The ALJ assigned little weight to this opinion. Tr. 25.

Because Dr. Crank's opinion was contradicted by Dr. Drenguis' opinion, the ALJ

was required to provide specific and legitimate reasons for rejecting Dr. Crank's

opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Crank's opined limitations were unsupported by the medical evidence. Tr. 25. An ALJ may reject limitations "unsupported by the record as a whole." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). The ALJ specifically noted Dr. Crank's diagnosis of "neck pain with radiculopathy," Tr. 506, which supported his conclusion regarding sedentary work, was inconsistent with treatment records indicating Plaintiff's neck was normal. Tr. 25 (citing Tr. 345, 465 (neck is normal); Tr. 412 (no ROM limitations; no pain or rigidity); Tr. 421 (neck normal; no pain, no ROM limitations); Tr. 471 (negative for neck pain); Tr. 500 (image of cervical region shows mild curvature of cervical spine convex to the right, otherwise "unremarkable exam")). The ALJ's finding was supported by substantial evidence and constitutes a specific and legitimate reason to discredit Dr. Crank's opinion.

In addition, the ALJ noted the opinion was based on a one-time brief examination for non-treatment purposes. Tr. 25. The number of visits a claimant has made to a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). However, the fact that an evaluator examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). The Court notes the ALJ's rationale is inconsistent with the great weight he gave to Dr. Drenguis, who

similarly had no treatment relationship with Plaintiff.  This was not a specific and legitimate reason to discount the opinion.  Nonetheless, any error is harmless because the ALJ provided an independently sufficient reason for rejecting Dr. Drenguis' opinion.  *See Tommasetti*, 533 F.3d at 1038.

### 3.  Sarah An, A.R.N.P.

On January 3, 2017, Ms. An completed a report in which she diagnosed Plaintiff with cervical radiculopathy/lumbar radiculopathy, 10 years uncontrolled diabetes mellitus type II, and bipolar disorder.  Tr. 429-31.  She observed Plaintiff had a positive straight leg test on the right side, limited ROM in his neck and back, pain in his lower back on the right side, and walked with a limp.  Tr. 429.  She opined regular and continuous work would cause his condition to deteriorate because he "needs frequent rest as well as [sic] unable to lift objects at this time patient needs to have diagnostic tests as well as non-pharmacologic treatment."  Tr. 430.  She concluded he would miss four or more days of employment per month.  Tr. 430.  The ALJ gave little weight to Ms. An's opinion.  Tr. 26.  Because Ms. An is not an acceptable medical source, the ALJ may reject her opinion by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

The ALJ found Ms. An's absenteeism conclusion had "no basis in the record," and was not supported by sufficient evidence.  Tr 26.  A medical opinion may be rejected if it is conclusory or inadequately supported.  *Bray*, 554 F.3d at

ORDER - 35

1228; *Thomas*, 278 F.3d at 957.  When prompted to provide an explanation, Ms.

An solely wrote, "due to current condition."  Tr. 430.  The ALJ reasonably

concluded that Ms' An's absenteeism conclusion lacked sufficient evidentiary

support and was inconsistent with the record.  Tr. 26.  Plaintiff contends Ms. An

supported the absenteeism conclusion by describing his symptoms (*i.e.,* limping

and a positive straight leg raise test) and by noting his "psychological impairments

and stress increased his perception of pain."  ECF No. 14 at 9.  However, this

evidence fails to adequately explain the absenteeism finding and is not consistent

with the record as a whole, which indicates relatively normal psychological

functioning and gait.  *See, e.g.,* Tr. 344 (normal gait and negative straight leg raise

test); Tr. 371, 387, 398 (steady gait and normal pace); Tr. 452 (balance and gait

normal); *but see* Tr. 349, 353, 359 (short stepping gait).  Ms. An's other treatment

notes also appear to be inconsistent with the instant report.  *See* Tr. 492 (Aug.

2015: normal psychiatric findings); Tr. 459 (Dec. 2016; normal psychiatric

findings); Tr. 452 (Jan. 2017; normal balance, gait, and coordination, normal

psychiatric findings except for agitation and anxiety).  Based on the lack of

explanation for the finding and the lack of support in the longitudinal record, the

ALJ's finding is reasonable and supported by substantial evidence.  This

constitutes a germane reason to reject Ms. An's opinions.  *See Bayliss*, 427 F.3d at

1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons

include inconsistency with medical evidence, activities, and reports).

   *4. Laurie Jones, M.S.M.F.T.*

   Ms. Jones provided counseling services to Plaintiff since the alleged onset

date. Tr. 26, 98. On March 6, 2017, she completed a mental source statement in

which she reported mild to moderate limitations in all areas of mental functioning

except a marked limitation in the "the ability to get along with co-workers or peers

without distracting them or exhibiting behavioral extremes." Tr. 432-35. She

opined Plaintiff would likely be off-task over 30% of the time during a 40-hour

work week and would likely miss four or more days of work per month. Tr. 434.

She indicated even a "minimal increase in mental demands or change in the

environment" could cause Plaintiff to decompensate. Tr. 434.

   The ALJ gave significant weight to Ms. Jones' findings of mild to moderate

limitations in all areas, but gave little to no weight to her conclusions that Plaintiff

would be off-task 30% of the time he was at work and would miss four or more

days of work per month. Tr. 26. Because Ms. Jones is a nonacceptable medical

source, the ALJ may reject her opinion by giving reasons germane to the opinion.

*Ghanim*, 763 F.3d at 1161.

   First, the ALJ found Ms. Jones' absenteeism and focus limitations were

unsupported by the record. Tr. 26. A medical opinion may be rejected if it is

unsupported by medical findings, *Bray*, 554 F.3d at 1228, or unsupported by the

record as a whole. *Batson*, 359 F.3d at 1195. Moreover, it is proper to read the

ALJ's decision as a whole in evaluating whether he considered the appropriate

factors in reaching his conclusion. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5

(7th Cir. 2004). Here, the ALJ found no basis in the record to conclude Plaintiff

would be absent at least four days per month due to his impairments. Tr. 26. The

record supports this conclusion. Apart from Ms. Jones' and Ms. An's findings,

which were both discredited by the ALJ, the record lacks evidence suggesting

Plaintiff struggled with absenteeism or with being substantially off-task. Plaintiff's

testimony suggests the opposite - he was able to maintain work as a forklift driver

for 12 hours per day, four days per week for six months. Tr. 79-88. The ALJ

previously evaluated this work activity, Tr. 22, 24, 26, and determined Plaintiff's

work was not lost due to his mental impairments, including absenteeism or off-task

work. Tr. 22, 24. He also noted Plaintiff's "allegations of disabling anxiety and

depressive symptoms" were inconsistent with his general presentation and the

objective evidence. Tr. 22. The ALJ's conclusion was reasonable based on the

lack of support in the record. This was a germane reason to discredit Ms. Jones'

opinions. *See Bayliss*, 427 F.3d at 1218.

Second, the ALJ found the absenteeism and focus limitations were less

credible because they were "based on the subjective report of limitations provided

by the claimant." Tr. 26. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. As discussed *supra*, the ALJ found the record did not support the absenteeism and focus limitations. Based on the lack of support in the record and the lack of explanation by Ms. Jones, particularly where she assessed mostly mild and moderate limitations otherwise, the ALJ reasonably concluded that the limitations were based on Plaintiff's self-reported symptoms, which he properly discredited. Tr. 26. The ALJ's conclusion was reasonably gleaned from the lack of evidence supporting the alleged limitations and constitutes a germane reason to discredit Ms. Jones' opinion.

Plaintiff also contends the ALJ failed to fully incorporate Ms. Jones' credited findings into the RFC. ECF No. 14 at 7-8. He argues the RFC fails to allow for absenteeism (more than four days per month) based on Ms. Jones' finding that there would be "interruptions from psychologically based symptoms" at least 20% of the workday. ECF No. 14 at 7-8; Tr. 432-33. However, as discussed above, the ALJ rejected Ms. Jones' finding regarding absenteeism and thereby was not required to incorporate it into the RFC. Plaintiff also argues the RFC fails to incorporate special supervision in light of Ms. Jones' moderate

limitation assessed in "sustain[ing] an ordinary routine without special supervision," ECF No. 14 at 7-8; Tr. 432. Ultimately, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). While Plaintiff asserts that a specific allowance should have been made for "special supervision," ECF No. 14 at 8, such an allowance could be deemed to contravene Ms. Jones' finding that Plaintiff suffers moderate limitations in accepting instructions and responding appropriately to supervisors, which was also credited. Tr. 433. The ALJ's interpretation and incorporation into the RFC is rational. The RFC also provides Plaintiff "is capable of engaging in unskilled, repetitive tasks in 2-hour increments," and that he "will be absent from work one time/month and be off task at work up to 10% of the time but can still meet the minimum production requirements of the job." Tr. 20. These limitations address Ms. Jones' opinions that Plaintiff will experience interruptions from psychologically based symptoms, will experience difficulty in maintaining concentration, persistence, or pace, and will experience difficulty in responding to changes in the work setting. Tr. 433-34.

5. *Rebekah A. Cline, Psy. D.*

On October 28, 2015, Dr. Cline performed a psychological evaluation. Tr. 363-68. She diagnosed Plaintiff with PTSD, unspecified anxiety related disorder, unspecified personality disorder (with features of borderline personality disorder),

ORDER - 40

and marijuana use disorder (marked, active). Tr. 365. Dr. Cline stated, "[he] currently endorses symptoms consistent with a diagnosis of borderline personality disorder. These are pervasive, and impact most every area of his life at this time;" he "reports avoidance of public or crowded or small places, symptoms akin to panic attacks when he has to be in such places and excessive worries that interfere with accomplishing other tasks; he has "ongoing problems initiating sleep," and with "daytime fatigue;" and he appears to meet at least minimal criteria for a diagnosis of PTSD. Tr. 364-65. Dr. Cline found marked limitations in Plaintiff's ability to communicate and perform effectively in a work setting, maintain appropriate behavior at work, and complete a normal workday/week without interruptions from psychologically based symptoms, but concluded the combined impact of his mental impairments was moderately severe. Tr. 366. She indicated the current impairments would persist following 60 days of sobriety but instructed "[he] needs to seek complete abstinence in order to make the most of any psychiatric intervention." Tr. 366. Finally, she determined the impairments would last 6-12 months, and recommended Plaintiff should be seeing a mental health provider once every two weeks, as well as engaging in group therapy and continued assessments. Tr. 366. The ALJ gave little to no weight to Dr. Cline's opinion. It does not appear that Dr. Cline's opinion is contradictory to any other source, nor does either party assert a contradiction. Thus, the Court assumes that

the ALJ was required to provide clear and convincing reasons to reject Dr. Cline's opinion. *Bayliss*, 427.F.3d at 1216.

The ALJ gave little weight to Dr. Cline's opinion because she "included symptoms, such as paranoia and auditory hallucinations, which are not supported by [the] record as a whole." Tr. 26. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Plaintiff contends the paranoia and hallucinations "are not isolated to this evaluation," and are a "credit to [Dr. Cline's] findings," as they demonstrate that she considered a "wider array of symptoms." ECF No. 14 at 6. However, no other provider noted the presence of auditory hallucinations or paranoia and the reports referenced by Plaintiff consist of his own self-reports (previously determined to be unreliable by the ALJ) and a single exam noting hyper-vigilance. *See* ECF No. 14 at 6; Tr. 262, 280; Tr. 435 (diagnosis of PTSD, unable to work w/others, hypervigilant, easily angered). While a different interpretation of the medical evidence could be made, the ALJ's interpretation of the longitudinal record regarding auditory hallucinations and paranoia is reasonable and supported by

substantial evidence. This was a clear and convincing reason to reject Dr. Cline's opinion.

Additionally, the ALJ rejected Dr. Cline's opinion because she was unfamiliar with Plaintiff's record and the "longitudinal picture of the claimant's psychological impairments." Tr. 26. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Here, Dr. Cline indicated in her evaluation that she did not review any medical records prior to the clinical interview. Tr. 363 (stating "N/A" under records reviewed section). This was a clear and convincing reason to reject Dr. Cline's opinion.

The ALJ also found Dr. Cline's opinion less credible because it was heavily based on self-reports from Plaintiff. Tr. 27. A physician's opinion may be rejected if it is based more heavily on a claimant's subjective complaints, which were properly discounted, than on clinical observations. *Tonapetyan*, 242 F.3d at 1149; *Ghanim*, 763 F.3d at 1162. Here, the ALJ concluded Dr. Cline's opinions were more heavily based on Plaintiff's reported symptoms; he noted that Dr. Cline indicated the evaluation was based on Plaintiff's self-reports and "information that [was] made available;" that Dr. Cline did not have access to medical records; and that she had not seen, evaluated, or treated Plaintiff prior to forming her opinions.

Tr. 26, 363. Because the ALJ previously discredited Plaintiff's symptom testimony, he found Dr. Cline's opinions were not fully reliable. Tr. 26. This was a clear and convincing reason, supported by substantial evidence, to reject Dr. Cline's opinion.

Relatedly, the ALJ gave the opinion less weight because it was based on a "one-time brief examination for non-treatment purposes." Tr. 26. The number of visits a claimant has made to a particular provider is a relevant factor in assigning weight to an opinion, 20 C.F.R. § 416.927(c), however, as the Court noted above, this reasoning is inconsistent with the ALJ giving significant weight to Dr. Drenguis' opinion. Consequently, this is not a clear and convincing reason to reject Dr. Cline's opinion. However, any error is harmless where other clear and convincing reasons were provided. *Tommasetti*, 533 F.3d at 1038.

The ALJ also rejected Dr. Cline's opinion because she "characterized the claimant's marijuana use as 'marijuana use disorder, marked, active," but failed to explain how the condition impacts the opined limitations. Tr. 27. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. Plaintiff contends Dr. Cline "explicitly opined that his limitations would persist with sobriety," and that even if marijuana use did contribute to Plaintiff's impairments, that fact is irrelevant for the ALJ at this point in his analysis. ECF No. 14 at 6. The report itself is unclear as to the import of the

finding on Dr. Cline's overall construction of the limitations.  To the extent, if any,

that the ALJ erred by giving less weight to the opinion due to the unexplained

impact of marked and active marijuana use, the error is harmless because the ALJ

provided other clear and convincing reasons supported by substantial evidence to

reject the opinion.  *Tommasetti*, 533 F.3d at 1038.

Finally, the ALJ discounted Dr. Cline's assessment because she opined that

Plaintiff's impairments would cause limitations for a six to 12-month period.  Tr.

27; Tr. 366.  Temporary limitations are not enough to meet the durational

requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a

claimant's impairment to be expected to last for a continuous period of not less

than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at

1165 (affirming the ALJ's finding that treating physicians' short-term excuse from

work was not indicative of "claimant's long-term functioning").  To be disabled,

an impairment must be expected to last for a continuous period of at least twelve

months.  *See* 20 C.F.R. §§ 404.1509, 416.909; *see also* 20 C.F.R. §§ 404.1505,

416.905.  In this case, Dr. Cline opined that Plaintiff would be impaired with

available treatment for up to 12 months.  Tr. 366.  As a result, Dr. Cline's opinion

satisfied the disability durational requirement, and this was not a clear and

convincing reason to discredit Dr. Cline's opinion.  However, such error is

harmless because the ALJ provided other clear and convincing reasons, supported

by substantial evidence, *see infra*, to discredit Dr. Cline's opinion. *Molina,* 674 F.3d at 1115. Plaintiff failed to show that the ALJ committed harmful error in weighing the medical opinions and is not entitled to remand on this ground.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 24, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 46